## Heckert's Appeal.

On the settlement of Lane's account as assignee for the benefit of creditors of Heckert, there was a large balance decreed to be payable to Heckert, which was deposited in a bank then in good credit, to the account of Lane, assignee of Heckert, and Heckert notified to come and receive it. Heckert did not, but made an arrangement with the bank, not communicated to the assignee, that he would not demand the money from the assignee, but that it should remain without change of the account and at interest: he received interest on it for some time, when the bank failed. *Held*, that the assignee was not liable for the loss.

May 26th 1871. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Lancaster county* : In Equity·: No. 97, to May Term 1871, by George Heckert, in the matter of his estate assigned for the benefit of creditors to James B. Lane.

The assignment under which these proceedings arose was made May 11th 1840, and was of all the estate, real and personal, of the assignor.

The assignee filed his final account on the 18th of April 1853, which, after considerable litigation, was confirmed by the Court of Common Pleas, and the decree of confirmation affirmed by the Supreme Court on the 1st of October 1855. By this decree it was ascertained that there was in the hands of the assignee, payable to the assignor, the sum of $43,557.46, of which $26,556.04 was a bond of one Helfenstein, and $17,001.42 cash;—as found by the report of auditors in the Court of Common Pleas.

James B. Lane, the assignee, died about January 1863, intestate, and administration of his estate on the 22d of that month was granted to Martha J. Lane and William B. Fordney.

On the 12th of October 1868, Heckert filed a bill in the Court of Common Pleas, setting forth the foregoing facts, and averring

[Heckert's Appeal.]

that he had frequently demanded payment of the above balance, with interest, but that he had "not been paid the same or any part thereof." He prayed that the administrators might be ordered to pay the amount decreed to be due him with interest, and also for general relief.

The administrators in their answer set out, amongst other things, "that on the 12th of April 1855, the bond of Helfenstein was paid to the said James B. Lane, with interest thereon, amounting to $1617.44, which interest was in addition to the balance reported by the auditors; that immediately after the decree of the Supreme Court Lane proposed to the complainant's counsel to pay the money to him, but he declined to receive it, and the complainant was invited to come on and draw the money himself; that Mr. Heckert came to Lancaster some time afterwards, and called on Mr. Lane, requesting him to pay the money in two checks, one for $40,000 and the other for the balance of the money, saying he would call for it in the morning; that Mr. Lane had a release prepared by a scrivener for Mr. Heckert to sign on receipt of the checks, but Mr. Heckert did not call for the checks next morning nor afterwards; that Lane opened an account on the 30th of March 1855, in the Lancaster Bank, as 'James B. Lane, assignee of George Heckert,' and on that day deposited to the credit of said account $19,888.22, and on the 13th of April following the further sum of $28,233.48, being the principal and interest of the Helfenstein bond; that at the time of said deposits until its failure the bank was in good credit; that some time after the deposits above referred to were made, Heckert entered into an arrangement with the officers of the Lancaster Bank, whereby he was to receive interest from the bank upon the funds deposited as aforesaid; that this arrangement was made privately, secretly and without the knowledge of Lane, and was studiously kept concealed from him; and that in pursuance of this arrangement Heckert from time to time drew his checks upon the bank for the interest on the funds, which were paid, and received interest in the aggregate amounting to $2470.25, until the bank failed, on or about the 16th of November 1856, and on the 3d of February 1857 made an assignment for creditors, and no assets have been distributed among its depositors; * * * that they gave due notice of their administration to creditors and others; and on the 20th of August 1864, filed their administration account, which was confirmed, and on the 19th of August 1865, filed their final account, which was also confirmed, and the balance thereon was paid over to the widow and heirs; that the complainant never made any demand upon them as administrators as aforesaid, until the filing of his petition on the 12th of October 1868."

A general replication was filed on the 5th day of January 1870, and Amos Slaymaker, Esq., appointed auditor.

[Heckert's Appeal.]

By his report, the auditor found, amongst other things, as follows:—

"On the 30th of March 1855, the assignee had deposited in the Lancaster Bank of the city of Lancaster $19,888.22 in cash to the credit of an account which was then opened with that institution, and appears in its books as the account of the 'Lancaster Bank with James B. Lane, assignee of George Heckert.' On the 13th of April 1855, he made a further deposit to the same account of $28,233.48, thus making the entire amount of the deposit to the credit of the trust, $48,121.70, which, beside the amount due to the assignor, included a sum of $2886.80, that was payable either to creditors or to the assignee. Upon this deposit checks were drawn by Mr. Lane upon written orders of Mr. Heckert, * * * amounting to $2957.68, leaving due him a balance of $42,277.32. * * * The Lancaster Bank, at the time that this deposit was made, was, and up to the day its doors were closed, continued to be in good credit, and to do a very large business. Mr. Lane deposited with it in various capacities, and at the time of its failure the firm of James B. & G. Taylor Lane, of which he was the leading member, had a balance in their favor of $1110.68. At the time of the final decree Heckert was living in Northumberland county. His counsel was the Hon. Thaddeus Stevens. William B. Fordney, who was counsel for Mr. Lane, * * * shortly after the decree called upon Mr. Stevens, and requested him to come and draw the money as Heckert's counsel. He declined, stating that he would write to him to come on and draw it himself. Mr. Heckert was in Lancaster on the 29th of October 1855, on which day a release was prepared by William Carpenter, Esq., for him to sign on receiving his money. Mr. Heckert was in Lancaster also on the 27th of November 1855, and on the 2d of January 1856, but no further step toward the transfer to him of this deposit appears to have been taken, either on the part of Mr. Lane or himself, and there is no evidence that he at any time demanded such a transfer from Mr. Lane. One witness testifies that about this time Heckert told him that he had not received the balance coming to him out of the estate, and would not take it or touch it. On the 15th and 28th of December 1855, checks were drawn by Mr. Lane on this deposit, on written orders of Mr. Heckert in favor of attorneys for creditors of Heckert. Subsequently to this no part of the deposit appears to have been drawn out by Mr. Lane or any one else, and the balance remained standing on the books of the bank to the credit of James B. Lane as assignee of George Heckert at the time of the failure of the bank, which occurred in the month of November 1856. At some time during the fall of 1855 or winter of 1855 and 1856, Mr. Heckert entered into an arrangement with the president of the Lancaster Bank, as to which the president,

B. C. Bachman, testifies as follows: ' I was notified by Mr. James B. Lane that Heckert was in Lancaster and would want his money, and that he had already prepared checks for him to draw the amount standing to his credit as assignee, on the following morning. The bank being seriously embarrassed at that time, I was anxious to retain the deposit for its benefit; I deemed it important to call upon Mr. Heckert in reference thereto. I found him, and ascertaining that that was his business, I requested him to come to the bank, as I desired to see him privately. He called in the evening as per agreement. When there, after some conversation, Mr. Longenecker being present, an arrangement was entered into with the said Heckert that he should receive a certain sum of money as interest on the deposit then standing to the credit of James B. Lane, assignee of George Heckert, and that he should receive interest on said deposit so long as it remained in the Lancaster Bank to the credit of James B. Lane, assignee. In pursuance of this arrangement the said Heckert was paid by me different sums of money at various times. I cannot recollect the amounts. The last sum having been paid to him by me a few days or a short time before the failure of the bank.' This statement is corroborated by the testimony of David Longenecker and other officers of the bank, as well as by its books, and may therefore be taken as absolutely correct." * * *

The auditor further found that the administrators, after having given due notice of the grant of administration, " settled a partial and afterward a final account, and paid over to those entitled thereto the balance thus appearing to be due to them—taking releases, but not refunding bonds. Neither during the process of settlement of this estate, nor subsequently, was any claim against the estate presented by or on behalf of Mr. Heckert, until October 12th 1868, when this proceeding was commenced.

" The entire ground of controversy, which has arisen from the state of facts narrated above, seems to be covered by two questions. These are 1st. Is Mr. Heckert, by reason of his acts with reference to the balance of the trust fund on deposit in the Lancaster Bank, to be regarded as having assumed possession of that balance, and 2d. If he is not to be so regarded, has his failure to obtain possession of that balance been caused by any wilful default on the part of his assignee James B. Lane ?

" In order to obtain a satisfactory answer to the first of these questions it will be necessary to consider the situation and character of this deposit at and after the time of the final confirmation of the decree distributing this estate; the rights and powers of the assignor, as to the balance, by that decree ascertained to be due to him ; and finally the acts of the assignor with reference to that balance, and the effect of those acts, upon the previously existing relation to that balance of his assignee and himself."

The auditor then states the facts bearing on this question, and applies the principles of the authorities, which he extensively quotes, and proceeds.

* * * " These facts are not slightly, but strongly, if not conclusively, indicative of ratification of the course of the assignee; and the conduct of the assignor, Mr. Heckert, if not absolutely inconsistent with any other supposition, did unquestionably best consist with the idea that for reasons sufficient to himself, he had come to the conclusion to leave the deposit unchanged, and by orders on the assignee to obtain such portions of it as from time to time he might require. Finally, and in addition to his positive acts indicative of acquiescence in the continuance of the deposit in the Lancaster Bank in the name of his assignee, there is no evidence that on that particular point he in any reasonable time expressed his dissatisfaction with the conduct of his assignee. He has, on the contrary, as far as appears from the testimony, on this subject preserved a profound silence, which has been broken, now only, after the lapse of fourteen years, when the bank has long since been ascertained to be wholly insolvent, and his assignee and his counsel have both died, and the estate of the former been entirely settled and the balance of it distributed among his heirs. In fine the conclusion of the auditor is, that the plaintiff by his long-continued silence, as well as by positive acts of acquiescence, is now estopped from questioning the propriety of his agent's conduct in permitting the balance of the estate to remain on deposit in the Lancaster Bank subsequently to the decree of the Supreme Court.

" The answer to the former of the two questions proposed in the earlier part of this report, therefore is, that Mr. Heckert, by reason of acts with reference to the balance of the trust fund on deposit in the Lancaster Bank, must be held actually, or if not actually, constructively, by the adoption of the acts of the assignee, to have assumed possession of that balance." * * *

On the 2d inquiry, as to default on the part of Lane, the auditor, he said :—

" In the opinion of the auditor, then, Mr. Lane was not bound to seek out Mr. Heckert as soon as the decree of the Supreme Court was announced, and tender to him the balance which by that decree was ascertained to be due to him, but was justified in waiting to receive his directions as to its disposal. While waiting for such directions, which might be expected at any time subsequently to the decree, his natural and proper course would be to leave the money in the bank on deposit. The Lancaster Bank, in which the money was deposited, was at that time in good credit, and so continued up to the time its doors were closed. Mr. Lane himself deposited with it, and the firm, of which he was a member, lost by its failure some $1100, which was the amount of the bal-

[Heckert's Appeal.]

ance in their favor on the books of the bank at that time. In making and continuing the deposit in the Lancaster Bank he cannot therefore be regarded as having acted otherwise than in entire good faith, and with common prudence, diligence and skill.

"Finally; in the general management of the business of the trust, and also in his conduct with reference to the balance payable to Mr. Heckert, Mr. Lane appears to have acted in absolute good faith, and carefully, skilfully, diligently, and with results most advantageous to the interests of his cestui que trust. That those results were not fully realized and enjoyed by Mr. Heckert, seems to be attributable entirely to himself. The evidence shows that Mr. Lane was ready to pay over his money to him when it became due, and that he actually proposed to pay it to his counsel. And there is no evidence that Mr. Heckert, though in Lancaster repeatedly during the three or four months immediately subsequent to the time of the final decree of the Supreme Court, ever demanded his money from Mr. Lane, or gave him any instructions as to its disposal. In the opinion of the auditor, therefore, there was on the part of Mr. Lane no such failure in the performance of his duty as assignee of George Heckert, as would suffice to make him responsible for the loss of the fund of the trust on deposit in the Lancaster Bank."

The auditor reported that the bill be dismissed.

After exceptions by the plaintiff the report of the auditor was confirmed by the Court of Common Pleas (Hayes, J., delivering the opinion).

Heckert appealed to the Supreme Court and in several specifications assigned the decree for error.

*J. L. Mayer*, for appellant.—A decree that there is a sum of money due by an accountant, is a decree for the payment of the sum found to be due: Shollenberger's Appeal, 9 Harris 341; Vincent v. Watson, 4 Wright 306; Gilmore v. Rodgers, 5 Id. 120. Execution upon a decree is regulated by statute, and is personal against the party when he has appeared to the proceeding: Wesley Church v. Moore, 10 Barr 281; Barr v. Barr, 2 Hen. & Munf. 26; Moore v. Ferguson, 2 Mun. 421. When a trustee is called on to answer for a breach of trust, the complainant, before decree, has an option to elect whether he will claim the fund in its transmuted form, or ask a decree for the money misapplied: Story's Equity, 9 ed. §§ 1262–1273 a; Pocock v. Reddington, 5 Ves. J. 794. But after a decree has passed against the trustee, a partial satisfaction by a receipt of trust funds, included in the decree, would operate only as a satisfaction *pro tanto*: Patton & Ruthrauff's Appeal, 12 P. F. Smith 143. If under the best advice a trustee acts wrong, it is his misfortune; but public policy requires that he should be the person to suffer: Lewin on Trusts *366;

[Heckert's Appeal.]

Boulton *v.* Beard, 27 Eng. L. and Eq. R. 421; Hill on Trustees *555; Neff's Appeal, 7 P. F. Smith 91; Keller's Appeal, 5 Barr 390; Konigmacher's Appeal, 1 Penna. R. 207. Mr. Lane was not the agent of Mr. Heckert; a trustee is vested with the title to the property, while an agent has only the custody and management of it: Beans *v.* Bullitt, 7 P. F. Smith 221; 1 Story Eq. § 464; Hill on Trustees 41; Geddis *v.* Irvine, 5 Barr 508. He should have made the funds productive: Lane's Appeal, 12 Harris 487; Biles's Appeal, Id. 335; Stearly's Appeal, 2 Wright 530; Landis *v.* Scott, 8 Casey 495; Mayberry's Appeal, 9 Id. 258; Lukens's Appeal, 11 Wright 356; Yundt's Appeal, 1 Harris 575; Bruner's Appeal, 7 P. F. Smith 52. The final decree of the Supreme Court, carried interest from the date of the former judgment: Wither's Appeal, 4 Harris 151. A trustee cannot invest the funds of the trust on the credit of a bank, except at his own risk: Hemphill's Appeal, 6 Harris 303; Worrell's Appeal, 11 Id. 44; 2 Story's Eq., 9th ed. § 1274; Aston's Estate, 5 Wharton 228; Moyle *v.* Moyle, 2 Russ. & M. 710; Darke *v.* Martyn, 1 Beav. 525; Hill on Trustees 376; Barney *v.* Saunders, 16 Howard 535. The decree affirmed in this court on the 1st of October 1855, bore interest like any other judgment: Wither's Appeal, 4 Harris 151; Brightly 561, pl. 6. The trustee could not refuse to pay, until a general release from all demands be given to him by the cestui que trust: Hill on Trustees, 4th ed. 1867, *580. As Mr. Lane was not a party or privy to the arrangement with the bank there could be no estoppel, or a settlement: Brubaker *v.* Okeson, 12 Casey 519; Eldred *v.* Hazlett, 9 Id. 307; Commonwealth *v.* Moltz, 10 Barr 531; 2 Smith's Leading Cases 645; Jewett *v.* Miller, 6 Selden 402. It is a case where one is innocent, and the other almost criminally negligent; the latter must make good the injury: Larkin's Appeal, 2 Wright 457–459. If Lane adopted the act of Bachman as his own, he would make the latter his agent, and be chargeable with the knowledge which Bachman possessed of the condition of the bank: Berryhill's Administratrix's Appeal, 11 Casey 245; Shoch's Appeal, 9 Id. 351. The business of taking proper care of the fund devolved on the trustee himself. There is no specific time for calling for an account, much less for payment which has been already decreed: Chalmer *v.* Bradley, 1 Jac. & Walk. 67; Hill on Trustees 168; Lewin on Trusts 729. It was the folly of the administrators to pay over the money without taking the proper security: Musser *v.* Oliver, 9 Harris 362. Payment over was at their own risk: Brightly 1861, pl. 303, pl. 181.

*S. H. Reynolds* and *G. M. Kline*, for appellee.—The duties of the assignee included the *payment of creditors*, as well as the

[Heckert's Appeal.]

custody and management of the assigned estate, and while any of those duties remained to be performed he could not be discharged.

The balance remaining in the hands of the assignee reverted to the assignor as absolute owner, and became subject to the usual incidents of ownership: Webb v. Dean, 9 Harris 32; Hubler v. Waterman, 9 Casey 414; Estate of Potter v. Page, 4 P. F. Smith 466; Denton v. Denton, 17 Maryland Ch. 403; Rice v. Burnet, 1 Spear 587; Rife v. Geyer, 9 P. F. Smith 396; Dodson v. Ball, 10 P. F. Smith 492; Bush's Appeal, 9 Casey 85; Kay v. Scates, 1 Wright 31. Mr. Lane being a trustee for distribution, was "under obligation to have the trust funds in hand ready to pay over to the rightful claimants:" McElhenny's Appeal, 10 Wright 347.

The owner could have recovered the deposit from the bank: Farmers' and Mechanics' National Bank v. King, 7 P. F. Smith 202; Bank of Northern Liberties v. Jones, 6 Wright 536.

The assignor's long-continued silence proves both his acquiescence in the deposit and his positive concurrence and acceptance of it: Smith v. Clay, in note to Deloraine v. Brown, 3 B. C. C. 639.

Trustees will not be liable, if in the ordinary discharge of their duty they deposit the assets in a bank, although the bank may fail: Johnston v. Newton, 11 Hare 160; Wilks v. Groom, 3 Drew 584; 3 Leading Cases in Equity *740; 2 Story's Eq. Jur. §§ 1269, 1270; Commonwealth v. McAllister, 4 Casey 480; s. c., 6 Id. 536. Lane was not bound to invest the fund: Biles's Appeal, 12 Harris 337; Yoder's Appeal, 9 Wright 394; McElhenny's Appeal, *supra.*

An assignee for the benefit of creditors is the mere agent of the assignor: Vandyke v. Christ, 7 W. & S. 375; Dohner's Assignees, 1 Barr 104; Rogers v. Fales, 5 Id. 158.

If the principal performs acts of ownership over the property, he confirms the doings of the agent: 1 Parsons on Contracts 82; Smith on Mercantile Law 147; Story on Agency, § 255; Hill on Trustees 382, 526, *527. Acquiescence is presumed from delay: Ashhurst's Appeal, 10 P. F. Smith 315; Harden v. Parsons, 1 Eden 145. A court of equity requires from trustees only common skill, prudence and caution: During's Appeal, 1 Harris 224.

It is sufficient if the agent keeps the money received by him safely and is ready to pay it over *on demand:* Williams v. Storrs, 6 Johns. Ch. Rep. 353; Cooley v. Betts, 24 Wend. 203; Drexel v. Raimond, 11 Harris 21; Krause v. Dorrance, 10 Barr 462; McDowell v. Potter, 8 Id. 190; Campbell v. Boggs, 12 Wright 524. *If money be in the hands of a trustee, and he* has done nothing amounting to an abuse of the trust, he is not liable to an action without *a demand:* Sears v. Patrick, 23 Wend. 528; Walrath v. Thompson, 6 Hill 541.

[Heckert's Appeal.]

The opinion of the 'ourt was delivered, October 9th 1871, by WILLIAMS, J.—We have examined with great care the whole of the voluminous record in this case, and are of the opinion that the evidence fully sustains the finding of the auditor, and that he has drawn the proper legal conclusions from the facts as found. If Heckert, knowing that Lane as his assignee had deposited in the bank a sum equal to the whole trust funds remaining in his hands, and which he had offered and was ready to transfer, agreed with the bank that he would not demand the money of the assignee but that it might remain in the bank for its use on the payment of interest thereon to him, it is clear that whether he made the arrangement known to the assignee 'or not' he assumed such dominion and control over the fund, as in equity would discharge the assignee from all responsibility for the loss arising from the failure of the bank. He could not by a secret contract agree that the bank should retain and use the deposit on paying him interest thereon, and yet hold the assignee responsible for the solvency of the bank and its safe keeping of the fund. The auditor found in substance that Heckert did make such an arrangement with the bank after the assignee had offered to transfer to him the money, and that he received the fruits of it down to the time of its failure; and he rightly held that he was chargeable with the loss. The appeal must therefore be dismissed and the decree of the court below affirmed.

And now, October 1871, This cause came on to be heard at the last May Term of this court held at Harrisburg, and was argued by counsel, and, upon consideration thereof, it is now ordered, adjudged and decreed that the appeal be dismissed and the decree of the court below affirmed at the costs of the appellant.